### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STATE OF MARYLAND, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-3656 |
| W. L. GORE & ASSOCIATES, INC., | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### **MEMORANDUM OPINION**

In this environmental enforcement case, Plaintiff the State of Maryland sues Defendant W. L. Gore & Associates, Incorporated ("Gore"), a materials science company, alleging that for more than fifty years Gore has been illegally releasing toxic chemicals into Maryland's ecosystems from its thirteen manufacturing facilities in Elkton, Maryland. (ECF No. 43)

Now pending is Cheryl Martin and Stephen Martin's (the "Martins") Motion to Intervene in Counts V and IX of Maryland's First Amended Complaint under Federal Rule of Civil Procedure 24. (ECF No. 49) Maryland advances no position on the Motion. (*Id.* at 1 n.1) Gore concedes that the Martins may intervene as of right in Counts V and IX but asks the Court to limit the Martins' participation in those counts to Gore's Cherry Hill facility. (ECF No. 56 at 1) Gore also asks the Court to impose discovery and briefing limitations. (*Id.*) Jurisdiction is proper here under 28 U.S.C. § 1331 and § 1367. The Court has reviewed the parties' submissions. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the Martins' Motion to Intervene (ECF No. 49) is GRANTED as to

1

Maryland's Counts V and IX. The Court will not impose limitations on the Martins' intervention in those counts.

## BACKGROUND

### I. Statutory Background

The Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901–6992, is the primary federal law governing solid and hazardous waste disposal. *Mehrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). In RCRA, Congress endowed the federal government and the states with shared enforcement power. *See* 42 U.S.C. § 6926 (state enforcement); *id.* § 6928 (federal enforcement); *see also Mehrig*, 516 U.S. at 486 (discussing shared enforcement); *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989) (same). Congress also authorized two types of citizen suits in 42 U.S.C. § 6972. First, under § 6972(a)(1)(A), anyone may bring a suit "against any person . . . who is alleged to be in violation of any . . . prohibition" created by the statute. As relevant here, this includes the prohibition on open dumping of solid or hazardous waste in § 6945(a). Second, under § 6972(a)(1)(B), anyone may bring a suit "against any person" whose past or present "handling, storage, treatment, transportation, or disposal of any solid or hazardous waste . . . may present an imminent and substantial endangerment to health or the environment."

Just as with many other environmental laws,[1] however, one's ability to file a citizen suit under RCRA is barred by diligent governmental enforcement. *See id.* §§ 6972(b)(1)(B), (b)(2)(C). As the Supreme Court noted in *Hallstrom*, when the government "take[s]

---

[1] *See, e.g.*, Endangered Species Act, 16 U.S.C. § 1540(g)(2)(iii); Clean Water Act, 33 U.S.C. § 1365(b)(1)(B); Clean Air Act, 42 U.S.C. § 7604(b)(1)(B).

responsibility for enforcing environmental regulations," the need for citizen suits is "obviat[ed]." 493 U.S. at 29. Nevertheless, when the government initiates an enforcement action, "any person may intervene as a matter of right." 42 U.S.C. §§ 6972(b)(1)(B), (b)(2)(E).

Maryland's Environment Article Title 9, Subtitle 3, Md. Code Ann., Env't §§ 9-301 (West 2025) is the State's water pollution control scheme. Section 1-904 of the Environment Article, entitled "Intervention in a civil action," grants "the unconditional right and authority to intervene" in cases brought under Title 9, Subtitle 3.

## II. Factual and Procedural Background

Gore is a materials science company founded in 1958 that makes plastics products for use across industries. (ECF No. 43 ¶ 33) Gore has thirteen[2] production facilities in or near Elkton, Maryland, many of which are clustered at multi-facility campuses. (*Id.* ¶ 44) The facilities are: Cherry Hill; Fair Hill; Appleton (a campus with four facilities); Elk Creek (three facilities); Elk Mills (three facilities); and Lovett. (*Id.*)

On December 18, 2024, Maryland filed a Complaint (ECF No. 1) against Gore, alleging common law and state and federal statutory claims. The crux of Maryland's factual allegations is that for at least the past fifty years Gore's thirteen Elkton production facilities have been releasing per- and polyfluoroalkyl substances ("PFAS"), including polytetrafluoroethylene ("PTFE") and perfluorooctanoic acid ("PFOA"), into the environment, causing

---

[2] Maryland also alleges that Gore owns a fourteenth facility in Elkton, the Left Bank facility. (ECF No. 43 at 12 n.4) The First Amended Complaint does not assert claims respecting the Left Bank facility.

3

environmental degradation.[3] (ECF No. 43 ¶¶ 1–3) Maryland claims that these chemicals are highly toxic, have damaged the State's natural resources, particularly the State's water, have injured the public, and will last forever without intensive remediation. (ECF No. 43 ¶¶ 1–5, 8–10, 16) On May 12, Maryland amended its Complaint. (ECF No. 43) The First Amended Complaint contains ten counts, but only two are relevant here. (*Id.*)

Count V alleges unauthorized discharge of pollutants and waste at all thirteen of Gore's Elkton, Maryland facilities in violation of Title 9, Subtitle 3 of Maryland's Environment Article, Md. Code Ann., Env't §§ 9-301 *et seq.* (*Id.* ¶¶ 178–88) Count IX alleges (i) imminent and substantial endangerment and (ii) open dumping, which are both violations of RCRA, 42 U.S.C. §§ 6945(a), 6972(a)(1)(B). (*Id.* ¶¶ 204–11) Maryland lodges Count IX specifically at Gore's Cherry Hill, Fair Hill, and four Appleton facilities. (*Id.*)

In this same five-month period from December 2024 to May 2025, the Martins were litigating their own suit against Gore. On December 9, 2024—just nine days before Maryland filed its Complaint (ECF No. 1)—the Martins sued Gore under RCRA's citizen suit provision, 42 U.S.C. § 6972. (ECF No. 49 at 2) They alleged imminent and substantial endangerment in violation of 42 U.S.C. § 6972(a)(1)(B) and open dumping in violation of § 6945(a). (*Id.*) On May 15, 2025—three days after Maryland filed its First Amended Complaint (ECF No. 43)—Judge Gallagher of this Court dismissed the Martins' citizen suit for lack of subject matter

---

[3] For clarity, factual allegations are taken from Maryland's First Amended Complaint (ECF No. 43), which mirrors the original Complaint (ECF No. 1) in almost all respects, but adds a tenth count.

jurisdiction due to a notice failure by the Martins.[4] *See Martin v. W. L. Gore & Assocs., Inc.*, No. SAG-24-3549, 2025 WL 1294891, at *4 (D. Md. May 5, 2025).

Gore and the Martins agree that Maryland triggered RCRA's bar on citizens suits, *see* 42 U.S.C. §§ 6972(b)(1)(B), (b)(2)(C), when it filed its First Amended Complaint (ECF No. 43). (ECF No. 49 at 4; ECF No. 56 at 1) They also agree that the bar prevented the Martins from refiling their own action against Gore after Judge Gallagher dismissed it. (ECF No. 49 at 4; ECF No. 56 at 1)

Two-and-a-half months later, on July 31, the Martins filed a Motion to Intervene as plaintiffs in this case pursuant to Federal Rule of Civil Procedure 24 and RCRA's intervention provisions, *see* 42 U.S.C. §§ 6972(b)(1)(B), (b)(2)(E). (ECF No. 49 at 1) The Martins assert that they have a significantly protectable interest in the case because they live in Elkton, Maryland near several Gore facilities, specifically Cherry Hill, Fair Hill, and the four Appleton facilities. (*Id.* at 1) The Martins also allege that their drinking water supply well has more than four times the maximum contaminant level of PFOA, which they attribute to Gore's release of PFAS from its Elkton production facilities. (*Id.*) The Martins seek to intervene as of right, *see* Fed. R. Civ. P. 24(a), in Maryland's Counts V and IX. (*Id.* at 4) Alternatively, they seek permissive intervention, *see id.* 24(b), for the RCRA imminent and substantial endangerment portion of Count IX.

---

[4] Judge Gallagher noted that the notice failure was the only basis for dismissal. *Martin*, 2025 WL 1294891, at *3. The Martins would still have been provided "another chance to sue," *see id.*, but for Maryland's First Amended Complaint (ECF No. 43) triggering the RCRA bar on citizen suits. *See* 42 U.S.C. §§ 6972(b)(1)(B), (b)(2)(C).

Maryland has taken no position on the Motion. (*Id.* at 1 n.1) Gore filed a Response in Opposition (ECF No. 56 at 1, 9), in which it concedes that the Martins meet the statutory threshold for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) for Counts V and IX of Maryland's First Amended Complaint. Gore asks, however, that the Court restrict the Martins' participation in those counts as to the Cherry Hill facility, and that the Court impose discovery limitations and "procedures to ensure efficient, non-duplicative briefing." (*Id.* at 1) This matter is ripe for review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 24 governs intervention and provides, in relevant part:

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

    (1) is given an unconditional right to intervene by a federal statute; or

    (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

    (1) *In General.* On timely motion, the court may permit anyone to intervene who:

        (A) is given a conditional right to intervene by a federal statute; or

        (B) has a claim or defense that shares with the main action a common question of law or fact.

A district court has broad discretion to grant or deny intervention. *See Stuart v. Huff*, 706 F.3d 345, 349–50 (4th Cir. 2013); *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). This Circuit has long preferred "liberal intervention" as it is "desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency

6

and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

## ANALYSIS

Pursuant to Rule 24, the Martins seek to intervene in two counts of Maryland's First Amended Complaint (ECF No. 43) against Gore. (ECF No. 49 at 7) First, they seek intervention in Count V, which alleges a violation of Title 9, Subtitle 3 of Maryland's Environment Article, Md. Code Ann, Env't §§ 9-301 *et seq.* (ECF No. 43 ¶¶ 178–88; ECF No. 49 at 7) Second, they move to intervene in Count IX, which alleges two violations of RCRA: one for imminent and substantial endangerment under 42 U.S.C. § 6972(a)(1)(B), and another for open dumping under § 6945(a).[5] (ECF No. 43 ¶¶ 204–11; ECF No. 49 at 7) Gore does not oppose that the Martins have the right to intervene. Instead, Gore states affirmatively that "the Martins can meet the standard for intervention as of right under Rule 24(a)(2) in [Maryland's] Count V . . . and Count IX."[6] (ECF No. 56 at 9). As such, the Martins' timely[7] Motion to Intervene (ECF No. 49) in Maryland's Counts V and IX is granted.

---

[5] In the alternative, the Martins seek to intervene permissively under Rule 24(b) in Maryland's RCRA imminent and substantial endangerment claim in Count IX. (ECF No. 49 at 14) Because Gore does not oppose intervention as of right, the Court does not reach this argument.

[6] The Martins moved to intervene under Rule 24(a)(1) and 24(a)(2). To be clear, because Gore concedes that intervention would be proper under Rule 24(a)(2), *see* (ECF No. 56 at 9), that is the grounds upon which the Court grants the Martins' Motion to Intervene.

[7] The Supreme Court has explained that untimely motions to intervene "must be denied." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973); *accord Alt*, 758 F.3d at 591. Gore does not contest the timeliness of the Martins' Motion (ECF No. 49), so a full timeliness analysis is not merited. Nevertheless, because of the Supreme Court's strong language in *Nat'l Ass'n*, it bears mentioning that the Martins's Motion was indeed timely. *See Alt*, 758 F.3d at 591. They filed in this Court on July 31, 2025, only seven months after Maryland's initial Complaint (ECF No. 1) and just two-and-a-half months after Maryland filed its First Amended Complaint (ECF No. 43), which added a count under RCRA. (ECF No.

7

Gore does oppose the degree to which the Martins may intervene. (ECF No. 59 at 9) Specifically, Gore argues that the Court must "strictly" limit the Martins' participation in Counts V and IX to Gore's Cherry Hill facility. (*Id.*) Gore also seeks limitations on the Martins' access to discovery from Gore. (*Id.* at 1) Finally, Gore asks the Court to impose procedures to ensure nonduplicative briefing to the Court. (*Id.* at 1) The Court first addresses Gore's argument to limit the Martins' intervention in Maryland's Counts V and IX to the Cherry Hill facility. The Court then addresses the request for limitations on discovery and briefing.

> I. **The Court Will Not Limit the Martins' Participation in Maryland's Counts V and IX to the Cherry Hill Facility**
>
>   a. **The Martins are Not Limited as Intervenors by the Scope of Their Previous Citizen Suit**

Although Gore concedes that the Martins may intervene as of right under Rule 24(a)(2) in Maryland's Counts V and IX, it asks the Court to "strictly limit[]" the Martins' participation in those counts to the Cherry Hill facility. (ECF No. 56 at 9) As noted above, Maryland's Count V alleges that Gore committed unauthorized discharge of pollutants and waste at all thirteen of its Elkton, Maryland facilities. (ECF No. 43 ¶¶ 178–88) Count IX alleges violations of RCRA at Gore's Cherry Hill, Fair Hill, and four Appleton facilities. (*Id.* ¶¶ 204–11) Gore's argument to limit the Martins' participation to Cherry Hill is that the Martins previously brought a citizen suit against Gore in which they only mentioned the Cherry Hill facility. (ECF No. 56 at 9–11) In essence, Gore claims that when an intervenor as of right has previously

---

49) When the Martins filed, the deadline for joinder of parties was still three weeks away, the deadline for fact discovery still seven months away. (ECF No. 56 at 7) District courts in this Circuit regularly find intervention at such an early stage of a case to be timely. *See, e.g.*, *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 494 (M.D.N.C. 2017); *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012).

filed a citizen suit about the same conduct, the scope of that citizen suit sets the scope for later participation as an intervenor. There is no basis in the text of Rule 24(a)(2) for this argument. Gore has not provided any cases on point, nor has the Court found any itself.

Beginning with the textual analysis of Rule 24, federal courts "give the Federal Rules of Civil Procedure their plain meaning." *See Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989). Just as with statutes, when the terms of a rule are "'unambiguous, judicial inquiry is complete.'" *Id.* (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Rule 24(a)(2) states that the Court must permit anyone to intervene who "claims an interest" in the case, "and is so situated" that not being able to participate might "impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Giving the rule its plain and unambiguous meaning, there are no limits for intervention relating to previous citizen suits. Therefore, there is no textual support for Gore's argument to limit the Martins' participation as intervenors to Cherry Hill because of their previous lawsuit.

Likewise, Gore provides no cases to support its argument, nor has the Court found any on its own. Instead, Gore makes broad arguments about the trial court's discretion to place limits on an intervenor's participation. (*Id.* at 7–8) Specifically, Gore quotes a 1997 case from the United States Court of Appeals for the Fifth Circuit, *Beauregard, Inc. v. Sword Services LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997), which says that "[i]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." The *Beauregard* case is inapposite here for two reasons. First, the party seeking limitations on intervention in that case did not seek to keep the intervenors out of *whole parts* of that case, as Gore does here. In fact, the Fifth Circuit's decision makes no mention of

9

citizen suits or limiting intervention as to certain portions of certain claims. Instead, the limitations which the district court imposed on the intervenors in *Beauregard* conditioned intervention on seizing a barge at issue in that case and sharing in its maintenance costs. *Id.* at 352. This goes to the second reason that *Beauregard* is inapposite here—it is completely factually distinguishable from this case. There, the Fifth Circuit made clear that it was addressing the "narrow issue" of "whether a district court can condition an intervenor's participation in an admiralty *in rem* case, upon the intervenor arresting the vessel, and sharing in its *custodio legis* expenses." *Id.* at 352. That question bears nothing in common with this environmental enforcement action and is therefore unpersuasive.

Gore also cites a 1992 case from the United States Court of Appeals for the Fourth Circuit, *Columbus-American Discovery Group v. Atlantic Mutual Insurance Co.*, 974 F.2d 450, 469 (4th Cir. 1992), to argue that "when a court determines that intervention would cause undue delay or prejudice, 'a federal district court is able to impose almost any condition, including the limitation of discovery.'" (ECF No. 56 at 8 (quoting *Columbus-Am.*, 974 F.2d at 469))

Gore overstates *Columbus-American* in a few ways. First, that case quite clearly stated that district courts may impose conditions on intervention when "granting an application on *permissive* intervention," 974 F.2d at 469 (emphasis added), not, as Gore suggests, "whenever a court determines that intervention would cause undue delay or prejudice." (ECF No. 56 at 8) Indeed, the Fourth Circuit explained that "historically most courts and commentators have held that conditions cannot be imposed on" interventions as of right. *Id.* (citing 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1922, at 505 (2d ed. 1986)). The court continued by saying that "intervenors of right 'assume the status of full participants in a lawsuit

10

and are normally treated as if they were original parties once intervention is granted.'" *Id.* (quoting *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985)). *Columbus-American* separated conditions on intervenors as of right from those on permissive intervenors. The Fourth Circuit did not speak as broadly as Gore would have the Court believe.

Second, *Columbus-American* noted that commentators before 1992 had questioned the very proposition which Gore claims the case stands for—that intervenors of right could be restricted in their participation. *Id.* at 470 (7C *Federal Practice and Procedure* § 1922, at 505–06). Third, and finally, the court made sure to explain that those district courts which had imposed restrictions on intervenors as of right had done so merely in a "housekeeping nature," not to deprive them of broad access to the litigation. *Id.* (citing 7C *Federal Practice and Procedure* § 1922, at 505–06). These caveats render Gore's argument as to *Columbus-American* unavailing.

In sum, neither the text of Rule 24(a)(2), *Beauregard*, nor *Columbus-American* supports Gore's argument that the Martins' participation as intervenors as of right must be limited by the scope of their previous citizen suit. Instead, *Columbus-American* makes clear that intervenors as of right join the lawsuit as full participants and are treated as if they were original parties. *Id.* at 469 (quoting *Merit Sys. Prot. Bd.*, 762 F.2d at 132). This rule is further supported by the weight of authority from the other federal courts of appeals. *See, e.g.*, *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019) ("A party granted leave to intervene of right . . . has the 'full rights of a party.'" (internal citation omitted)); *Merit Sys. Prot. Bd.*, 762 F.2d at 132 (same); *Alvarado v. J.C. Penney Co., Inc.*, 997 F.2d 803, 805 (10th Cir. 1993) (same). Therefore, the Court will not limit the Martins' intervention in this case to Cherry Hill.

### b. The Martins Claim a Significantly Protectable Interest in All Thirteen of Gore's Elkton, Maryland Facilities

The Martins claim an interest in all thirteen of Gore's Elkton, Maryland facilities and seek full participation in Maryland's Counts V and IX. (ECF No. 57 at 3) Under the standard from Rule 24(a)(2), the Martins have sufficiently demonstrated that they have a significantly protectable interest in all thirteen properties. The Court will not limit their participation to Gore's Cherry Hill facility. Instead, the Martins will be able to participate fully alongside Maryland as to the thirteen facilities at issue in Count V and the Cherry Hill, Fair Hill, and four Appleton facilities at issue in Count IX. (ECF No. 43)

Rule 24(a)(2) states that a court must allow intervention as of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action." Even though Gore concedes the Martins' right to intervene (ECF No. 56 at 1, 9), Rule 24(a)(2) nevertheless limits intervention to the "interests" that an intervenor "claims." The Supreme Court has explained that the word "interest" means "a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Fourth Circuit further explained *Donaldson* by saying that a putative intervenor has a significantly protectable interest when he or she "stand[s] to gain or lose by direct legal operation of the district court's judgment." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1992); *see also Md. Restorative Just. Initiative v. Hogan*, 316 F.R.D. 106, 111 (D. Md. 2016) (applying *Donaldson* and *Teague* together).

The Martins claim that they "have been impacted by all of Gore's facilities." (ECF No. 57 at 3) They allege that they "live and work in a community that is impacted by traveling airborne emissions that deposit onto the land and subsequently leach into the groundwater." (*Id.*) They further allege that their drinking water supply well has more than four times the

12

maximum contaminant level of PFOA. (ECF No. 49 at 1) The Martins can meet the *Teague* standard for a significantly protectable interest. They stand to gain or lose by this Court's judgment on the merits of Maryland's Counts V and IX.

Of course, intervention as of right does not confer an "unlimited right to participate in every aspect of the litigation." *Colony Ins. Co v. Burke*, 698 F.3d 1222, 1240 (10th Cir. 2012); *accord Dep't of Nat. Res. & Env't Control v. Mountaire Farms of Del., Inc.*, 375 F. Supp. 3d 522, 532 (D. Del. 2019) (citing *Harris v. Pernsley*, 820 F.2d 592, 599 n.11 (3d Cir. 1987)). Courts may place restrictions on the participation of an intervenor as of right. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party."). Nevertheless, pursuant to *Donaldson* and *Teague*, a court must allow an intervenor to participate in those claims for which they have a "significantly protectable interest." The Martins have a significantly protectable interest as to Maryland's Counts V and IX (ECF No. 43). This means that they may participate in Count V as to all thirteen of Gore's facilities, and in Count IX as to the Cherry Hill, Fair Hill, and four Appleton facilities. The Court will not limit the Martins' participation to Cherry Hill for either count.

## II. The Court Will Not Impose Limitations on Discovery or Briefing at This Stage of the Case

In addition to asking the Court to limit the Martins' participation to the Cherry Hill facility, Gore also asks that the Court limit the Martins' ability to seek discovery. Finally, Gore asks the Court to impose procedures to limit duplicative briefing.

Gore argues that limiting discovery and briefing would "minimize the risk of delay, duplication, and inefficiency." (ECF No. 56 at 12) In support of this argument, Gore points

13

the Court to a 2015 environmental case from the Southern District of West Virginia, *Ohio Valley Environmental Coalition, Inc. v. McCarthy*, 313 F.R.D. 10 (S.D. W. Va. 2015). There, an environmental advocacy group sued the administrator of the Environmental Protection Agency for approving an administrative decision not to develop contamination standards for pollution in certain biologically impaired West Virginia streams. *Id.* at 14. A group of coal companies moved to intervene as defendants both as of right and permissively. *Id.* The court denied intervention on both grounds. *Id.* In denying *permissive* intervention, the *Ohio Valley* court explained that intervention would be "likely [only] to result in duplicative briefing" without a "corresponding benefit." *Id.* at 31 (quoting *Ctr. for Biological Diversity v. EPA*, No. 13-1866, 2014 WL 636829, at *2 (W.D. Wash. Feb. 19, 2014)). Gore posits this language as support for its contention that the Court should limit the Martins' participation. As is evident from the Court's explanation of *Ohio Valley*, however, that case is inapposite and lends no support to Gore's argument to limit the Martins' briefing and discovery. *Ohio Valley* spoke about "duplicative briefing" without "corresponding benefit" in determining that *neither* intervention as of right nor permissive intervention was appropriate. *Id.* As discussed previously, the Martins have a right to intervene as plaintiffs in this case alongside Maryland. Put simply, the Martins may not only benefit the adjudication of this case with their briefing and discovery, they are entitled to both as intervenors as of right.

  Gore also argues that limitations would be appropriate to ensure efficiency, because "[a]dditional parties always take additional time." (ECF No. 56 at 12 (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984)). That supposition is undercut by this Circuit's preference for liberal intervention to dispose of as much of a case as possible at once. *Feller*, 802 F.2d at

729 (quoting *Nuesse*, 385 F.2d at 700). As Judge Chasanow of this Court has recognized, full intervention without limitations on discovery or briefing is appropriate at such an early stage of a case. *See Am. Humanist Ass'n v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 303 F.R.D. 266, 271 (D. Md. 2014); *see also Dep't of Nat. Res. & Env't Control v. Mountaire Farms of Del., Inc.*, 375 F. Supp. 3d 522, 533 (D. Del. 2019). The Martins moved to intervene (ECF No. 49) on July 31, 2025, just two-and-a-half months after Maryland filed its First Amended Complaint (ECF No. 43), which added RCRA claims. The deadline for fact discovery is still several months away—March 6, 2026. The earliness of the proceedings in this case justifies the Martins' participation without limitations.

Moreover, restrictions on discovery and briefing would be improper here because the Martins' participation will likely be quite helpful in resolving the case. *See Am. Humanist*, 303 F.R.D. at 271. In *American Humanist*, the plaintiffs asked this Court to limit the intervenors' right to discovery. 303 F.R.D. at 271. Even though the Court undoubtedly had discretion to limit access to discovery because the intervenors were permitted to intervene under Rule 24(b), Judge Chasanow nevertheless declined to do so because the intervenors' knowledge with and involvement in the subject matter of the case meant that their participation "may [have] aid[ed] in the resolution" of the case. *Id.*

That reasoning is persuasive here for two reasons. First, and as discussed above, the Martins have a right to intervene, meaning that they are "'full participants'" in the case. *Columbus-Am.*, 974 F.2d at 469 (quoting *Merit Sys. Prot. Bd.*, 762 F.2d at 132). This necessarily includes the ability to seek discovery. *See* Fed. R. Civ. P. 26(b). Second, the Martins allege that their drinking water supply well is contaminated with PFOA, one of the chemicals at the heart

15

of Maryland's case against Gore. Just as in *American Humanist*, the Martins' knowledge of and personal experience with the chemical contamination Maryland alleges may aid this Court in fully resolving this matter. In sum, there is no reason to put limitations on the Martins' access to discovery or briefing when the case is still in its early stages, the Martins have a right to intervene, and their participation could prove to be quite helpful. The Court denies Gore's request for such limits.

## CONCLUSION

For the reasons stated above, the Martins' Motion to Intervene (ECF No. 49) is GRANTED pursuant to Federal Rule of Civil Procedure 24(a)(2). The Court will not impose limitations on the Martins' participation in Counts V and IX, nor will it limit their access to discovery or briefing.

A separate Order follows.

Date: October 29, 2025

/s/
Richard D. Bennett
United States Senior District Judge